**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
*Alexandria Division*

In re:

Sue Baek                                    Case No. 10-19360-KHK

Debtor                                      (Chapter 7)

**MEMORANDUM OPINION AND ORDER**
**DISMISSING ORDER TO SHOW CAUSE**

This matter is before the Court on the Court's Order to Show Cause why Wells Fargo Bank, N.A should not be held in contempt for violating the chapter 7 discharge injunction (Docket No. 30) and Wells Fargo's Motion to Dismiss With Prejudice (Docket No. 39) in relation to the same. The Court held a hearing on these matters on January 2, 2024, at the conclusion of which the Court ordered the parties to submit briefing on the question of whether Virginia law allows a lien to attach to a future contingent interest in property that at the time of the docketing of the lien, was held as tenants by the entireties. For the reasons that follow, the Court finds that Wells Fargo is not in contempt of the discharge injunction and grants Wells Fargo's Motion to Dismiss.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 as applied in this contested matter under Rule 9014.

**Findings of Fact**

Sue Baek, the Debtor in this case, resides in Vienna, Virginia. Docket No. 1, pg. 1. On December 11, 2003, the Debtor and her then husband Kim Baek, acquired real property located at 602 Old Courthouse Road, S. E., Vienna, Virginia 22180 (the "Property"). Docket No. 23, Exhibit B (the "Deed"). The Deed reflects that the Property was taken as tenants by the entireties. *Id.*

On October 9, 2009, Wachovia Bank, NA obtained a default judgment in the Circuit Court of Fairfax County, Virginia. The Judgment was entered against Ms. Baek in the amount of

$170,454.16 and also included $25,568.12 for attorney's fees and costs of $216.00.  It was subject

to an interest rate of 8.14% per annum running from July 22, 2008.  Docket No. 23, Exhibit A.

The Judgment was docketed in the land records of Fairfax County on October 23, 2009.  *Id.*  It is

undisputed that sometime thereafter, Wells Fargo became the successor to Wachovia Bank, NA,

and is now the proper party in interest.

On November 3, 2010, the Debtor filed a voluntary petition for relief under chapter 7 of

the Bankruptcy Code.  Docket No. 1.  She listed the Property in her schedules and indicated it was

owned as tenants by the entireties.  Docket No. 6, pg. 11 ("Schedule A").  On February 16, 2011,

the Debtor received a chapter 7 discharge.  It is undisputed that Wachovia, and therefore, Wells

Fargo, received notice of Ms. Baek's discharge.  Docket No. 23, Exhibit D. ("Notice of

Discharge").  It is also undisputed that neither Wachovia nor Wells Fargo made any filings in the

land records of Fairfax County to indicate that the Debtor received a discharge.

Wells Fargo also held a mortgage on the Property secured by a deed of trust recorded on

November 7, 2013.  Docket No. 23, Exhibit E. (the "HAMP Mortgage").  The interest rate on the

HAMP Mortgage was 4.5%, subject to periodic adjustment.  Docket No. 23, Exhibits E and F.

On November 19, 2015, Ms. Baek and her husband divorced and entered into a property

settlement agreement which transferred the Property to the Debtor, thereby severing the tenancy

by the entirety.  Thereafter in February of 2022, the Debtor sought to refinance the HAMP

Mortgage on the Property, obtaining a preliminary approval at a fixed rate of 3.75%.  Docket No.

23, Exhibit G.

When the refinancing loan went to settlement, the settlement company found Wells Fargo's

judgment in the land records and informed Ms. Baek that there was a judicial lien on the Property

in favor of Wells Fargo.  Docket No. 23, Exhibit H.  As a result, the Debtor was unable to refinance the HAMP Mortgage on the Property.

On August 14, 2023, Ms. Baek moved to reopen this case to seek contempt sanctions against Wells Fargo, asserting that Wells Fargo had violated the discharge injunction by asserting a judgment lien on the Property.  Docket Nos. 20 and 23.  The Court granted the Motion to Reopen; thereafter, by agreement of the parties the Court set the Order to Show Cause for an evidentiary hearing on January 2, 2024. at which hearing Wells Fargo would be required to appear and show cause why it should not be held in contempt for violating the discharge injunction.  Docket Nos. 27, 28, 29 and 30.  On December 4, 2023, Wells Fargo filed its Motion to Dismiss and supporting Memorandum, arguing that its judgment lien survived the Debtor's discharge and that therefore the lender did not violate the discharge injunction.  Docket No. 39, 40.

At the conclusion of the hearing, the Court ordered the parties to submit briefs on the question of whether Virginia law allows a lien to attach to a future contingent interest in property that at the time of the docketing of the lien, was held as tenants by the entireties.  The Court also announced that it would take the matters under advisement following submissions of those briefs.

The Debtor filed her brief on March 7, 2024, and Wells Fargo filed its brief on March 8, 2024.  Docket Nos. 49, 50.

### Conclusions of Law

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding as it concerns the administration of the estate, determination of the validity of liens. 28 U.S.C. § 157(b)(2)(A), and (K).

The Debtor seeks an award of damages, both actual and punitive, an award of attorney's fees and costs incurred in this proceeding, an injunction against any further representation that Wells Fargo has a judicial lien against Ms. Baek's property and an order directing it to mark its judgment "Discharged in Bankruptcy".  Docket No. 23, pg. 4.  As a result, this is a civil contempt proceeding subject to the "no fair ground of doubt" standard announced by the Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799, 204 L. Ed. 2d 129 (2019).  In other words, a civil contempt finding would only be appropriate where there was "no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart*, S. Ct. at 1801.  In the event the creditor is found in civil contempt, the Court has broad discretion to craft an appropriate remedy.

Civil contempt in the instant context requires that the Debtor prove by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's "favor"; (3) ... that the alleged contemnor by its conduct violated the terms of the decree and had knowledge (at least constructive knowledge) of such violations; and (4) ... that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (omissions and alterations in original) (quoting *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992))

In this proceeding there is no question that the discharge was validly entered, that Wells Fargo knew about the discharge and that the discharge was entered in Ms. Baek's favor.  A more difficult question is whether Wells Fargo's assertion of its lien during the Debtor's attempted refinance of the mortgage on the Property constituted a violation of the discharge. More specifically, the issue before the Court is whether there is any fair ground of doubt that Wells Fargo,

in maintaining that it held a valid judgment lien, violated the discharge injunction.  It is well-settled that the discharge does not invalidate or discharge liens which are "in rem" rights against property. *DLJ Mortgage Capital, Inc. v. Arnolds et al. (In re Arnolds)*, No. 15-14215-BFK, 2023 WL 138858 (Bankr. E.D. Va. Jan. 9, 2023).

Citing to *In re Birney*, 200 F.3d 225 (4th Cir. 1999), the Debtor argues that Wells Fargo could not have held a valid lien because at the time the Judgment against Ms. Baek was docketed and recorded in the land records, the Property was held as tenants by the entireties, and therefore, according to the Debtor, no lien could attach at that time.  She goes on to argue that during the bankruptcy and after, the automatic stay and subsequently the discharge, prevented later attachment. Ms. Baek also cites *In re Sampath*, 314 B.R. 73 (Bankr. E.D. Va. 2004) for the proposition that for purposes of lien attachment, no contingency interest can exist with respect to entireties property.  Relying on the Supreme Court of Virginia's opinion in *Boisseau v. Bass*, 100 Va. 207, 40 S.E. 647 (1902), the Debtor argues further that Virginia law does not allow any type of lien to attach to any type of contingent interest in real property.  Finally, she argues that the plain language of section 8.01-458 of the Virginia Code does not include future contingent interests in real property.

Wells Fargo argues that its lien attached to the Debtor's future contingent interest in the Property pre-bankruptcy and subsequently the proceeds of that interest once it was transferred to the Debtor in fee simple upon divorce when the tenancy by the entirety was severed.  Docket No. 40, pgs. 6-8.  In support of that argument, Wells Fargo cites *Massie v. Yamrose*, 169 B.R. 585, 586 (W.D. Va. 1994), *In re Yotis*, 518 B.R. 481 (Bankr. N.D. Ill. 2014), *In re Jaffe*, 932 F.3d 602, 609 (7th Cir. 2019) and *In re Strandberg*, 253 B.R. 584 (Bankr. D. R.I. 2000).  Wells Fargo relies on *Leasing Serv. Corp. v. Just.*, 243 Va. 441, 443, 416 S.E.2d 439, 441 (1992) for the proposition that

section 8.01-458 of the Virginia Code includes not only the real property itself but interests in real property as well. Wells Fargo also cites *U.S. v. Craft*, 535 U.S. 274, 281-282 (2002) for the proposition that even property held as tenants by the entireties leaves the individual spouse with sufficient contingent property rights for purposes of attachment (albeit in the context of Federal tax liens). Wells Fargo also asserts that it did not seek to enforce its lien, but instead, "merely responded to Debtor's closing agent's inquiry about the judgment lien, confirmed its existence, and advised how Debtor could seek to resolve it." Docket No. 40, pg. 8.

The question before the Court is ultimately whether there was any objectively reasonable basis for Wells Fargo to believe that Virginia law allows a lien to attach to a future contingent interest in property that at the time of the docketing of the lien, was held as tenants by the entireties. Without deciding the underlying question of whether a lien in fact attached, based on the reasoning that follows, which is expressed in light of the cited authorities, the Court finds that there was an objectively reasonable basis to believe that the lien could attach to a future contingent interest. The Court will now address each of the parties' cited authorities in turn.

The Debtor argues that the Fourth Circuit's opinion in *Birney* is dispositive of the issue. In that case the debtor, Mr. Birney and his non-filing wife owned real property in Maryland as tenants by the entireties. *In re Birney*, 200 F.3d 225, 227 (4th Cir. 1999). One of the debtor's individual creditors, Mr. Smith obtained a judgment against him in state court, and thereafter Mr. Birney filed a voluntary chapter 7 petition. *Id*. His spouse did not. *Id*. The debtor listed the property as exempt because it was owned as tenants by the entireties, and sometime thereafter, he received a discharge, and the case was closed. *Id*. Subsequently, Mr. Birney's wife died. *Id*. Following the death of the debtor's wife and the entry of the discharge, the judgment creditor asserted a lien in the property under section 11–402(b) of the Maryland Code. Md. Code Ann. Cts. & Jud. Proc. § 11–402(b)

(1998).   The judgment creditor argued that the lien arose by operation of law upon the spouse's

death, which occurred post-discharge.  *Id*.

The Fourth Circuit held that no lien existed in the property, observing,

During the period prior to Birney's bankruptcy petition, Smith's lien could not

attach to the property because Mrs. Birney was still alive. Because Smith held no

claim against Mrs. Birney, and because Mrs. Birney owned an undivided interest in

the property as tenants by the entireties with her husband, Smith's judgment against

Birney could not ripen into a lien on the property so long as Mrs. Birney was alive.

*In re Birney*, 200 F.3d at 227.  The Fourth Circuit went on to observe,

It could not ripen into a lien between the filing of the bankruptcy petition and the

discharge because 11 U.S.C. § 362(a)(5) imposed an automatic stay which prohibits

any lien on a pre-petition debt from attaching. And finally, it could not ripen into a

lien following Birney's discharge because the discharge extinguished his liability

for the underlying debt. Smith, therefore, cannot reach the Cecil County property

directly through Birney.

*Id*. at 228.

Upon review, the Court finds that the *Birney* case does not answer the question presented

to this Court, which is whether there is an objectively reasonable basis to believe that a lien

attached to a future contingent interest under Virginia law.  Wells Fargo asserts that the lien

attached pre-petition to the Debtor's future contingent interest in the Property, not to the Property

itself.  The *Birney* decision was decided based in part on Maryland law and makes no reference to

or analysis of whether a lien attaches to a future contingent interest.  Accordingly, Birney does not

foreclose the possibility that Wells Fargo had an objectively reasonable belief that it held a valid

lien.  To be clear, this Court is not deciding that such a lien did in fact attach and is valid under

Virginia law, and it need not do so to resolve the dispute before it.

The Court next turns to the Debtor's argument that *In re Sampath*, 314 B.R. 73 (Bankr.

E.D. Va. 2004) stands for the proposition that there can be no future contingent interest in real

property held as tenants by the entireties.  That case involved the question of whether a deed that

conveyed real property to the debtor, his wife and their daughter as joint tenants with the common-

law right of survivorship but did not recite the debtor's marital status in the deed, rendered the

debtor's interest as one held as tenants by the entireties.  Judge Mayer held in that case that Virginia

law provided that the deed in fact did create a tenancy by the entirety.  Judge Mayer did not

confront the question of whether Virginia law allowed a lien to attach to a future contingent interest

in property, but engaged in a survey of tenancy by the entireties law, observing generally that in

respect of married couples,

> They could not take separate parts, or moieties, of the property. They were seised
> *per tout et non per my*, that is, by the whole (per tout) and not by the part or share
> (per my). There was but one part: the entirety of the property. It was neither a
> concurrent ownership nor a joint estate, but rather an individual ownership, an
> estate owned by a single juridic entity.

*In re Sampath*, 314 B.R. at 77-78.

In other words, a property owned as tenants by the entireties cannot be carved up and

transferred or otherwise be alienated by one spouse alone.  That opinion, however, does not speak

to future contingent interests in property held by the individual spouses.

Ms. Baek's argument under *Sampath* depends on her premise that any future contingent

interest is "severable and alienable," and therefore is inconsistent with the single-moiety premise

of a tenancy by the entirety.  Docket No. 49, pg. 6 ("However, a contingent future interest in real

property is both severable and alienable: meaning that the interest is severable from a moiety held

by the grantor, and capable of being transferred, either voluntarily or involuntarily") (internal citations and footnote omitted).  The Debtor cites no binding authority for this premise, but instead cites a law review article.  While the Court does not question the quality of the article, the Court finds that the article does not support the proposition proposed by the Debtor.  First, the article does not address the precise question before this Court, and second, the article itself seems to acknowledge that Virginia law allows alienation of "interests contingent on an event (surviving the life tenant, for example)…" T. P. Gallanis, *The Future of Future Interests*, 60 Wash. & Lee L. Rev. 513, 518 (2003) (citing to *Prince v. Barham*, 103 S.E. 626, 627 (Va. 1920) (observing that an executory interest may be conveyed just as a contingent remainder as long as there is an ascertained person to take under the devise).  Accordingly, the Court finds that neither *Sampath*, nor the cited article renders Wells Fargo's belief that it held a valid judgment lien objectively unreasonable.

The Court next turns to the Debtor's argument that Section 8.01-458 of the Virginia Code does not allow a lien to attach to a future contingent interest.  That section provides in relevant part,

> Every judgment for money rendered in this Commonwealth by any state or federal court or by confession of judgment, as provided by law, shall be a lien on all the real estate of or to which the defendant in the judgment is or becomes possessed or entitled, from the time such judgment is recorded on the judgment lien docket of the clerk's office of the county or city where such land is situated.

Virginia Code §8.01-458.  The Debtor argues that the phrase "shall be a lien on all the real estate of or to which the defendant in the judgment is or becomes possessed or entitled" means that liens only attach at the time the debtor actually possesses or is entitled to the property.  She argues that therefore, the statute by its terms excludes future contingent interests in property held as tenants by the entireties, asserting that if the legislature intended to include future contingent interests it would have defined real estate to include an interest in real estate.  Docket No. 49, pgs. 8-9.

The Court begins by noting that the Virginia Code does not seem to expressly define the term real estate, and neither party has supplied the Court with a citation to a definition for the term under Virginia law.  The Court also notes that despite the Debtor's contention that Section 8.01-458 does not reach "interests" in real estate, that claim is belied by the holding in *Leasing Serv. Corp. v. Just.*, 243 Va. 441, 443, 416 S.E.2d 439, 441 (1992) cited by Wells Fargo.  In *Leasing* the Virginia Supreme Court interpreted that section of the Virginia Code and observed that the liens thereunder attached to "any *interest*…in land in that county…"  *Leasing Serv. Corp. v. Just.*, 243 Va. 441, 443, 416 S.E.2d 439, 441 (1992) (emphasis added) (court observing that the "lien is imposed on all of [defendant's] real property *interests* in Wise County that were acquired after [the] judgment was recorded") (emphasis added).

The Court reiterates that it need not decide whether Virginia law actually allows for the lien to attach, but instead, whether Wells Fargo had an objectively reasonable basis to believe that it attached.  The Court finds that this statute could be read to allow for such an attachment, particularly when focusing on the word "entitled."  Further, the Court finds that it is not objectively unreasonable to believe "real estate… to which the defendant is… entitled" could include a contingent future interest in such real estate, particularly in light of the Virginia Supreme Court's interpretation of the attachment statute in *Leasing*.  To exclude interests beyond present possession would read the word "entitled" out of the statute and the Court is not at liberty to do so.

Ms. Baek also argues that *Boisseau v. Bass*, 100 Va. 207, 40 S.E. 647 (1902), holds that a writ of fieri facias under then section 3601 of the Virginia Code, may not attach to a contingent interest in a life insurance policy, and that therefore by the same logic, a judgment lien cannot attach to a future contingent interest in real estate.  Docket No. 49, pg. 8 n 5.  The question before the Supreme Court of Appeals of Virginia in 1902 was, as the court put it,

> whether or not, under section 3601 of the Code, Jennie M. Robinson, the execution
> creditor, had, by virtue of her execution in the hands of the appellant, a lien upon
> the policy here involved. In other words, was the policy such personal estate as a
> fi. fa. lien would fasten upon, in contemplation of the section mentioned?

*Boisseau v. Bass' Adm'r*, 100 Va. 207, 209, 40 S.E. 647, 648 (1902). The Supreme Court of Appeals

of Virginia held that no lien could attach because the policy at issue was one that may never come

due and owing, according to its terms. Those terms provided, among other things, that "[a]

premium of $29.22 had to be paid quarterly, on the 15th day of January, April, July, and October

in every year, during the continuance of the contract, until premiums for 20 full years had been

paid to the company" before the insurance company would be obligated to honor any claim under

the policy. *Boisseau v. Bass' Adm'r*, 100 Va. 207, 209, 40 S.E. 647, 648 (1902). In other words,

where the policyholder failed to pay the premiums, they had nothing due to their failure to satisfy

the condition precedent to receiving benefits. The *Boisseau* decision rested on the premise of a

contingency that "may or may not happen." *Boisseau*, 100 Va. at 210, 40 S.E. at 649. So, it is clear

to this Court that Virginia law will not allow attachment of a fieri facias lien in the context of

property rights that may never arise.  That situation was also present in the case of *Shifflett v.*

*Latitude Properties, Inc.*, 294 Va. 476, 84, 808 S.E.2d 182, 186 (2017) where the Supreme Court

of Virginia held that tax refunds for which returns had not been filed at the time of the issuance of

the writ were not subject to a fieri facias lien. It was not certain that a tax return would be filed,

because that was in the complete control of the filer. The same is not true for a tenancy by the

entirety, which necessarily must come to an end, at the latest, upon the death of one or both spouses.

Further, it is not as if the Debtor, or any individual spouse, that jointly holds property as

tenants by the entireties holds nothing, which is essentially what the insured had in *Boisseau* where

the condition precedent of paying the necessary premiums was not met. As the Fourth Circuit

Court of Appeals recognized in *Morgan v. Bruton* (which relies on U.S. v. Craft, 535 U.S. 274,

281-282 (2002), which Wells Fargo cites in its brief), the Supreme Court, in the context of analyzing a tenancy by the entirety under Michigan law, has "recognized that while state law may create the legal 'fiction' that each tenant in a tenancy by the entirety has no separate interest in the property, in substance he has all the 'most essential property rights,' even if he does not possess the right of unilateral alienation. *Morgan v. Bruton*, 99 F.4th 206, 209 (4th Cir. 2024) (citing *United States v. Craft*, 535 U.S. 274, 279-82, 122 S. Ct. 1414, 152 L. Ed. 2d 437 (2002)).  The Court acknowledges that the *Morgan* case deals with federal tax liens, not state law, but merely refers to the case for the proposition that the debtor clearly possesses more than nothing when it comes to a future contingent interest in property for purposes of whether Boisseau forecloses the possibility of a lien attaching to a future contingent interest.  The Court also reiterates that the law review article the Debtor cites even seems to acknowledge such a possibility.  T. P. Gallanis, *The Future of Future Interests*, 60 Wash. & Lee L. Rev. 513, 518 (2003).  The Court therefore finds that *Boisseau* does not foreclose the possibility of Virginia law allowing a lien to attach to a contingent future interest in real property that was at the time of attachment, presently held as tenants by the entireties.

To the contrary, the Court finds that it is possible that Virginia law recognizes future contingent interests in property held as tenants by the entireties, and therefore it is objectively reasonable for Wells Fargo to believe it had a lien in such a right.  The Seventh Circuit Court of Appeals' opinion in *In re Jaffe*, 932 F.3d 602 (7th Cir. 2019), cited by Wells Fargo, is instructive.  In that case, the Seventh Circuit held that a judgment lien attached to an individual spouse's contingent future interest in entireties property prior to that spouse filing for bankruptcy and determined that the Illinois statute provided for contingent rights that go along with interests that are held as tenants by the entireties.  *Jaffe*, 932, F.3d at 605-606, 609 ("Here, Williams obtained a

judgment lien on Jaffe's contingent future interest that existed when Jaffe filed his bankruptcy petition"). Those contingent future interests capable of being attached included "(a) an interest as a tenant in common in the event of a divorce, (b) an interest as a joint tenant in the event that another homestead is established, and (c) a survivorship interest in the entire property in the event of the other tenant's death." *In re Jaffe*, 932 F.3d 602, 605-606 (citing 765 ILCS 1005/1c). The *Jaffe* case relies on the similar *Yotis* case cited in Wells Fargo's brief, for the same proposition. Docket No. 50, pg. 6. Wells Fargo also relies on *In re Strandberg*, 253 B.R. 584 (Bankr. D. R.I. 2000), another exemption impairment case where the court found that a judgment lien attached to a debtor's future contingent interest in entireties property. While these cases were decided based on the law of different states, when comparing the rationale and the statutory rights at issue, their logic is instructive.

Virginia law also appears to recognize these contingent rights. *See* Va. Code § 22-111 ("Upon the entry of a decree of divorce from the bond of matrimony, all contingent rights of either consort in the real and personal property of the other then existing, or thereafter acquired, including the right of survivorship in real or personal property title to which is vested in the parties as joint tenants or as tenants by the entireties, with survivorship as at common law, shall be extinguished, and such estate by the entirety shall thereupon be converted into a tenancy in common"). While the Debtor argues that Illinois and other States have much broader definitions of real estate, the Debtor has failed to provide authority indicating that the Virginia definition is narrower and does not include such interests. Indeed, the Debtor has not provided a definition of real estate under Virginia law, and as previously noted, the Debtor's argument is undercut by the *Leasing* case and the plain language of the statute.

While less express in its holding, Wells Fargo also cites *Massie v. Yamrose*, 169 B.R. 585, 588 (W.D. Va. 1994) for support of its position that a lien attached to the future contingent interest in the Property.   That case involved the impairment of homestead exemptions and the determination of whether a chapter 7 debtor could avoid under 11 U.S.C. § 522(f) a judgment lien against an individual spouse when the property at issue was held as tenants by the entireties.   In that case, the District Court for the Western District of Virginia held that absent the avoidance of a judgment lien in the bankruptcy, the lien could later attach to the debtor's property in the event the tenancy by the entirety dissolved.   That case involved a chapter 7 debtor who presumably would be receiving a discharge, although the opinion does not speak to those circumstances and does not expressly analyze what interest the lien attached to.   While the case does not expressly speak to the issue before this Court, it is objectively reasonable for Wells Fargo to believe that it stands for the proposition that judgment liens against one spouse could survive discharge in a chapter 7 and nevertheless attach to property in the event the tenancy by the entirety was later severed.

### Conclusion

Based on the record in this case, the foregoing cited authorities and the arguments of the parties, the Court cannot find that Wells Fargo violated the discharge injunction because it had an objectively reasonable basis to believe that it held a lien in the Debtor's future contingent interest in the Property, and that such lien attached to such interest and survived the Debtor's discharge and then attached directly to the Debtor's fee simple interest in the Property following dissolution of the tenancy by the entirety upon the Debtor's divorce.   Accordingly, because the elements of civil contempt cannot be satisfied in this matter, the Court will dismiss the show cause proceeding against Wells Fargo.   The parties shall bear their own costs in this matter.

It is therefore **ORDERED**:

A.  Wells Fargo is not in contempt of the discharge injunction.

B.  Wells Fargo's Motion to Dismiss With Prejudice (Docket No. 39) is GRANTED.

C.  The Order to Show Cause (Docket No. Docket No. 30) is DISMISSED.

D.  The parties shall bear their own costs in this matter.

E.  The Clerk shall provide a copy of this Opinion and Order, or CM-ECF notice of its

entry, to all counsel of record in this matter.

Date:  Jul 2 2024                    /s/ Klinette H Kindred
                                     Klinette H. Kindred
                                     United States Bankruptcy Judge


Entered On Docket: Jul 23 2024